UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRADLEY M. SHIDELER,<br><br>            Plaintiff<br><br>   v.<br><br>MICHAEL ASTRUE, Commissioner<br>of Social Security,<br><br>            Defendant | Cause No.: 3:10-CV-384 RLM |

OPINION and ORDER

Bradley Shideler seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act. *See* 42 U.S.C. § 423(d). The court has jurisdiction over this action under 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the Commissioner's decision.

I. BACKGROUND

Mr. Shideler suffers from osteogenesis imperfecta, a genetic disease also known as "brittle bone disease." Mr Shideler testified before the Administrative Law Judge that, at the time, he had suffered broken bones 55 times throughout his life, which contributed to debilitating arthritis; he had to have reconstructive surgery on his left foot at the age of 16; breathing is very painful; his back pain is constantly a 10 on a 10 point scale; he can't grab things with his hands; and other problems with which the court presumes the reader's familiarity.

Mr. Shideler applied for SSDI benefits on October 31, 2006. He claimed a disability onset date of June 30, 1995, and his date last insured was March 31, 2000. After being denied benefits and going through the usual processes, he appeared before the Administrative Law Judge in March 2009. Mr. Shideler was represented by counsel at the hearing. Mr. Shideler, a friend with whom he was living at the time, and a vocational expert all testified at the hearing. The ALJ issued a detailed ruling denying benefits in May 2009. The Appeals Council denied review in July 2010, making the ALJ's decision the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed. Mr. Shideler filed his opening brief, and the government filed its response. The time within which to file a reply brief has passed.

The ALJ's decision followed the standard five-step sequential evaluation used in these matters. *See* 20 C.F.R. §§ 404.1520(a). The ALJ concluded that "the claimant's and his witness' statements concerning the intensity, persistence and limiting effects of [his] symptoms are not persuasive because the statements are not supported by the medical and other evidence of record." R. 13. Still, the ALJ allowed Mr. Shideler a number of restrictions when she concluded

> that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) but ... that the claimant can never crouch, kneel, crawl or climb ladders, ropes or scaffolds; can only occasionally climb ramps or stairs; cannot do any overhead reaching; is limited to frequent but not constant fingering of small objects; must avoid

> exposure to extremes of cold, heat, humidity and unprotected heights. In addition, the claimant is limited to simple, routine tasks.

R. 12. The vocational expert testified that, under these limitations, jobs existed in significant numbers in the national economy that Mr. Shideler could have performed as of March 31, 2000, the date last insured, including credit clerk (about 100 jobs in the regional economy), order clerk (about 150 jobs in the regional economy), and telephone clerk (about 100 jobs in the regional economy). Mr. Shideler challenges the ALJ's conclusion that he wasn't disabled through March 31, 2000, the date last insured, arguing that the ALJ's findings weren't supported by substantial evidence.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the court must affirm the Commissioner's determination if it is supported by substantial evidence, Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This deferential analysis prevents the court from re-weighing the evidence, making independent findings of fact, deciding questions of credibility, or substituting its own judgment for that of the Commissioner. Clifford v. Apfel, 227 F.3d 836, 869 (7th Cir. 2000). In reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that

supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

### III. Discussion

Mr. Shideler claimed a disability onset date of June 30, 1995, and his date last insured was March 31, 2000. This date last insured was pivotal to the ALJ's decision. Mr. Shideler stopped working after he tearing a knee ligament in October 1999. Mr. Shideler told his doctors that the injury happened while he was riding his dirt bike. R. 198, 202. Though he didn't have insurance, Mr. Shideler was able to obtain necessary surgery and made what his medical records indicate to be a very good recovery. R. 181, 184, 187, 190, 192, 198. Mr. Shideler's doctor discharged him in May 2000 and allowed Mr. Shideler to return to work without any restrictions. R. 181. Mr. Shideler was to return to his doctor of there were any problems. Id.

Mr. Shideler's medical records concern mostly his knee injury, revealing no doctor visits between 1995 and 2000 for other medical issues and providing brief

4

insight to a scoliosis finding in 2007 and echocardiogram and orthopedic consultation in 2009. The ALJ noted that all the medical records corroborate Mr. Shideler's claim of having osteogenesis imperfecta, and the ALJ discredited the State agency's rosy findings in December 2006 and March 2007 about Mr. Shideler's residual functional capacity. But the ALJ ultimately found the testimony about the intensity, persistence and limiting effects of his symptoms not persuasive because they weren't supported by objective medical and other evidence in the record.

The ALJ's comments at the hearing reveal the ALJ's concerns: though she seemed quite accepting of what Mr. Shideler told her at the hearing in 2009 (concerning, for example, his severe back pain, his need to lie down to alleviate that pain, the impairments in his hands, and so on), there was little testimony and no medical evidence corroborating his claims of inability to work due to disability before the date last insured of March 31, 2000. The ALJ said, "actually, I have to go back to prior to 2000," R. 39; the ALJ told Mr. Shideler's attorney exactly what she was looking for when she said to him, "My problem with this case is that there's very little medical prior to his date last insured," R. 54; the ALJ said again, "It's just a matter of the problem with the date last insured," R. 56; and the ALJ reminded Mr. Shideler's attorney that "The question is the severity and how far back it's gone," R. 59.

The ALJ let Mr. Shideler submit records from a medical exam he was to receive after the hearing and indicated a desire to "connect all the pieces together"

5

for Mr. Shideler. R. 56. Addressing his pre-2000 condition, Mr. Shideler testified that "I could probably do a little bit more then but not much more than what I'm capable of doing today." R. 57.

Mr. Shideler now argues that the ALJ erroneously accepted some of Mr. Shideler's testimony, but not other aspects of it, and did so without any basis. Specifically, the ALJ took into account almost all of the limitations Mr. Shideler testified to, including humidity restrictions, but didn't take into account Mr. Shideler's need to lie down for long periods three times a day in order to alleviate his back pain. Mr. Shideler argues the ALJ not only did this without basis but that the ALJ also exaggerated Mr. Shideler's testimony about the number of times he needs to lie down. Mr. Shideler argues this was detrimental to him because the vocational expert testified there would be no jobs for someone with all of Mr. Shideler's restrictions once he took into account Mr. Shideler's stated need to lie down for long periods three times a day.

Mr. Shideler's argument overlooks that, for purposes of SSDI benefits, he must show he was disabled as of the date last insured. A judge might find Mr. Shideler was disabled as of the date of his March 2009 hearing, but the question is what Mr. Shideler's condition was on or before March 31, 2000.

An ALJ's credibility determination is given great deference on appeal and will not be reversed unless it is "patently wrong." Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009). When evaluating credibility the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's

6

statements." Id. (*quoting* SSR 96-7p). This means the ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" Simila v. Astrue, 573 F.3d at 517 (*citing* 20 C.F.R. § 404.1529(c)(2)-(4)).

The ALJ's decision to limit how much of Mr. Shideler's testimony she would find credible, and therefore how many restrictions she would accept in her residual functional capacity finding, was not patently wrong. Further, substantial evidence supports the ALJ's residual functional capacity finding, and the ALJ's reasoning provides a logical bridge between the evidence and her conclusions.

As the ALJ explained at the hearing, she needed Mr. Shideler and his attorney to take her back to March 31, 2000. The ALJ was quite sympathetic to Mr. Shideler's condition in 2009, and she stated she was looking for something to "tie the pieces together" for Mr. Shideler. But the evidence cut the other way. Mr. Shideler was hurt when dirt-biking in 1999, and made a very good recovery from that injury. Mr. Shideler hadn't broken any bones during the several years before 2000 (though he broke a finger in 2007, which he set to a splint by himself). Mr. Shideler's explanation for why he had no medical records before his dirt-biking incident, and for why he had a small pittance of records after May 2000 didn't add up, and the ALJ pointed this out in her opinion: Mr. Shideler said a free clinic only recently became available in his town (in 2009) yet he was able to obtain surgery in 1999 (though he had no insurance) and his treating physician encouraged him

7

to see him if he had problems. Further, Mr. Shideler's physicians sent him back to work and indicated no restrictions in 2000 and 2009.

The ALJ further explored Mr. Shideler's current day to day life, discovering, for example, that Mr. Shideler now can't lift a crock pot and that it takes him a very long time to do laundry. She considered his work history and found that of the two jobs he'd had in the past 15 years, he couldn't work as a carpet cleaner now because that would be too physically demanding. She explored what medications he took for pain management (as of the hearing). She listened to the testimony of Mr. Shideler's housemate.

The ALJ properly took into account not only the lack of objective medical evidence supporting Mr. Shideler's testimony concerning the intensity, persistence and limiting effects of his symptoms on or before March 31, 2000, but also the factors required in the Code of Federal Regulations (daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, etc.). The ALJ's reasons for finding Mr. Shideler's testimony to be not fully credible are sound and not "patently wrong." Thus, the ALJ's ultimate conclusions are supported by substantial evidence.

Mr. Shideler's condition might reveal a weakness in SSDI law, but that is a determination to be made by legislators and policymakers and not by the court.

IV. CONCLUSION

The ALJ's decision was articulate and detailed, and supported by all the evidence. The ALJ accurately and logically bridged the connection between the evidence and the denial of benefits. Based on the foregoing, the court DECLINES Mr. Shideler's request to remand this action to a different ALJ for further proceedings and AFFIRMS the ALJ's denial of benefits.

SO ORDERED.

ENTERED: August 11, 2011

/s/ Robert L. Miller, Jr.
Judge
United States District Court